UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ROBERT JAMES ABERNATHY and
TINA LOUISE ABERNATHY,                                Case No. 20-11600-ta13

    Debtor.

## OPINION

Before the Court is the fee application of Debtors' chapter 13 counsel, New Mexico Financial and Family Law, P.C. ("Counsel"). In the application, Counsel seeks allowance of $10,170 in professional fees, plus costs and New Mexico gross receipts tax. Because the amount sought is significantly higher than the average fee application for a chapter 13 case in this district, the Court set the matter for hearing. The Court now concludes that it will allow Counsel's professional fees in the amount of $7,500.

1.    Facts.

    The Court finds:[1]

    On or about May 4, 2020, Debtors retained Counsel to file this case. The billing rates for the professionals who worked on the case were $250/hour for Don Harris and Dennis Banning and $150/hour for Jill Stevenson. Debtors gave Counsel a $3,000 retainer.

    Counsel filed the case on August 11, 2020. The initial filings included the petition, means test, schedules, statement of financial affairs, plan, credit counseling certificate, and attorney fee disclosure. The attorney disclosure stated that Counsel had received a $3,000 retainer and had

---

[1] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

agreed to represent Debtors for $250/hr. In Debtors' proposed plan, Counsel estimated its total fees, costs, and taxes would be about $7,500. Given the $3,000 retainer, Counsel estimated that $4,500 would be paid through the plan.

Debtors' schedules reflect total assets of $747,719.87, total debts of $467,119.10, and net monthly income available for plan payments of $1,142.09.

Debtors' plan is relatively simple. Debtors proposed to make monthly payments of $1,000 for 60 months,[2] which would pay Counsel's fees, trustee fees, a federal tax debt, and a portion of general unsecured claims, pro rata. The plan proposed to pay Debtors' home mortgage and car loan "outside the plan." There were no pre-petition arrearages on either loan, which made plan drafting easier. Finally, the plan proposed to surrender Debtors' RV to the purchase money lender. After the lender sold the RV it would have an unsecured claim for the deficiency. The deficiency claim would be paid pro rata with other general unsecured creditors.

Debtors attended their § 341[3] meeting on September 16, 2020. At the meeting Ms. Abernathy apparently told the chapter 13 trustee about a new job.

The plan drew two objections, from New Mexico Taxation and Revenue Department and the chapter 13 trustee.

The claims bar date was October 20, 2020. Ten claims were filed, totaling $465,111.15. Of this amount, $361,626.45 is secured, $6,702.21 is priority (IRS), and $96,782.49 is nonpriority unsecured.

The Court held a preliminary hearing on plan confirmation on October 6, 2020. It set a final hearing for November 10, 2020.

---

[2] Per § 1325(b)(4)(A)(ii), Debtors have above-median income, so they had to file a five year plan.
[3] All statutory references are to 11 U.S.C., unless otherwise noted.

-2-
Case 20-11600-t13    Doc 44    Filed 03/19/21    Entered 03/19/21 14:17:58 Page 2 of 10

On November 5, 2020, the Court entered a stipulated order granting stay relief to the RV lender so it could repossess and sell the RV.

Debtors' plan was confirmed November 16, 2020, by entry of a stipulated order agreed to by Debtors, the chapter 13 trustee, and counsel for the New Mexico Taxation and Revenue Department. In the confirmation order Debtors agreed to increase their plan payments from $1,000 to $1,350 a month. The increase was needed to satisfy the "projected disposable income" test of § 1325(b)(1)(B), i.e., that plan payments are equal to Debtors' projected monthly disposable income for 5 years.[4] Debtors also agreed to amend their schedules I and J to reflect Ms. Abernathy's change in employment. They did so.

Surrendering the RV was not as simple as it could have been because the RV had been damaged. Debtors and Counsel decided that it would be better to repair the damage before surrendering the RV, to minimize the deficiency claim.

Counsel billed Debtors 37.2 hours of attorney time and 5.8 hours of paralegal time to get the case through confirmation. The time spent and fees billed can be categorized as follows:

| Category | Attorney time | Paralegal time | Combined fees |
|---|---|---|---|
| Preliminaries; drafting schedules, SOFAs, and plan; document gathering | 7.7 | 5.3 | $2,720 |
| Plan objections and confirmation | 9.3 | .3 | $2,370 |
| Claims review | 4.5 | | $1,125 |
| Creditors' meeting | 1.8 | .1 | $465 |
| Mortgage review | 1.4 | | $350 |
| Fee application | 1.1 | | $275 |
| Vehicle surrender | 6.6 | | $1,650 |
| State taxes | 2.5 | | $625 |
| Other | 2.3 | .1 | $590 |
| Total | 37.2 hours | 5.8 hours | $10,170 |

---

[4] The confirmation order estimated this amount to be $71,910.60. Total plan payments will be $80,300.

2. <u>General Requirements for Debtor Attorney Fee Allowance in Chapter 13</u>.

Compensation of counsel for chapter 13 debtors is governed by § 330(a)(4)(B), which provides:

> In a ... chapter 13 case ... the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

This subsection was added to the bankruptcy code by the Bankruptcy Reform Act of 1994.[5]

"[A] chapter 13 debtor has the right to employ counsel so long as the following two requirements are met: 1) the need to disclose compensation paid or agreed to be paid pursuant to section 329 and 2) the need for approval of post-petition payments from property of the estate pursuant to section 330(a)(4)(B)." *In re Rosales,* 621 B.R. 903, 922 (Bankr. D. Kan. 2021), quoting *In re Cahill,* 478 B.R. 173, 176 (Bankr. S.D.N.Y. 2012).

Allowance under § 330(a)(4)(B) can include reimbursement of expenses advanced, e.g., filing fees, witness fees, and deposition costs. *See, e.g., In re Riley*, 923 F.3d 433, 443 (5th Cir. 2019); *In re Frazier*, 569 B.R. 361, 369 (Bankr. S.D. Ga. 2017); *In re Genatossio*, 538 B.R. 615, 617 (Bankr. D. Mass. 2015) (§ 330(a)(4)(B) permits an award of fees and expenses); *In re Pastran*, 462 B.R. 201, 213 (Bankr. N.D. Tex. 2011) (same); *In re Marvin*, 2010 WL 2176084 (Bankr. N.D. Iowa 2010) (allowing reimbursement of expenses); *In re Williams*, 384 B.R. 191, 194 (Bankr. N.D. Ohio 2007) (court may award fees and expenses); *cf. In re Marotta*, 479 B.R. 681, 689 (Bankr. M.D.N.C. 2012) (advance for the filing fee is not recoverable under § 330(a)(4)(B)).

---

[5] The Reform Act also deleted the language "or to the debtors attorney" from § 330(a)(1). Until then, § 330(a)(1) had included debtor's attorney in the list of persons who could be paid from the estate. In *Lamie v. United States Trustee*, 540 U.S. 526 (2004), the Supreme Court held that the Reform Act meant that debtor's counsel in a chapter 12 or 13 can only be compensated under § 330(a)(4)(B).

"The attorney seeking compensation bears the burden of proving entitlement to all fees and expenses requested." *In re Dille*, 2021 WL 864201, at *2 (Bankr. W.D. Mo.), citing *In re Kula*, 213 B.R. 729, 736 (8th Cir. BAP 1997); *In re Cooke,* 2020 WL 6821730, at *3 (Bankr. D. Ariz.), citing *In re Roderick Timber Co.,* 185 B.R. 601, 606 (9th Cir. BAP 1995) "This burden is not to be taken lightly given that every dollar expended on legal fees results is a dollar less that is available for distribution to the creditors." *Dille*, 2021 WL 864201, at *2, citing *In re Ulrich,* 517 B.R. 77, 80 (Bankr. E.D. Mich. 2014).

In determining the reasonableness of compensation under § 330(a)(4)(B), the Court considers the factors set out in § 330(a)(3). *In re Rosales*, 621 B.R. at 927; *In re Hunt*, 588 B.R. 496, 499 (Bankr. W.D. Mich. 2018).

3. <u>Determining How Much Compensation Should be Allowed</u>.

"To be compensable, the fees must be for services that were 'actual' and 'necessary.' § 330(a)(1)(A). If the applicant clears these hurdles, then the fees must be 'reasonable.'" *In re Railyard Company, LLC*, 2017 WL 3017092, at *3 (Bankr. D.N.M.); *see also In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) (same); *In re Commercial Financial Services, Inc.*, 427 F.3d 804, 810 (10th Cir. 2005) (same).

    a. <u>Actual Services</u>. Compensation can only be allowed for "actual" services performed. *See, e.g., In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 601 (Bankr. D. Colo. 1989) ("The Code requires that the services actually be performed before the compensation is awarded. Therefore, work to be performed does not qualify for actual services rendered"). This is not an issue here.

    b. <u>Necessary Services</u>. Necessity is a question of "whether the services were necessary to the administration of, or beneficial toward the completion of a case." *In re Schupbach*

*Investments, LLC*, 521 B.R. 449, at *8 (10th Cir. BAP 2012) (unpublished); *In re Hungry Horse, LLC*, 2017 WL 3638182, at *3 (Bankr. D.N.M.) (same). In chapter 13 cases, the benefit can be to the debtor rather than the estate. *In re Guajardo*, 2020 WL 4919794, at *3 (Bankr. D.N.M.); *In re Williams*, 378 B.R. 811, 823 (Bankr. E.D. Mich. 2007) (§ 330(a)(4)(B) is an exception to the general rule that professionals' services must benefit the estate to be compensable); *In re Argento*, 282 B.R. 108, 116 (Bankr. D. Mass. 2002) (same).

Reviewing the docket in this case and Counsel's fee bills, the Court concludes that work was necessary in each category outlined in the table above.

        c.        <u>Reasonable Compensation</u>. In the Tenth Circuit, bankruptcy courts ruling on the reasonableness of professional fees must weigh the factors in § 330(a)(3) and those discussed in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974). *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1246-47 (10th Cir. 2013). Under § 330(a)(3) the Court must consider:

> (1) the time spent on such services;
> (2) the rates charged for such services;
> (3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The *Johnson* factors are:

> (1) The time and labor required;
> (2) The novelty and difficulty of the questions;
> (3) The skill requisite to perform the legal service properly;

> (4) The preclusion of other employment by the attorney due to acceptance of the case;
> (5) The customary fee;
> (6) Whether the fee is fixed or contingent;
> (7) Time limitations imposed by the client or the circumstances;
> (8) The amount involved and the results obtained;
> (9) The experience, reputation, and ability of the attorneys;
> (10) The "undesirability" of the case;
> (11) The nature and length of the professional relationship with the client; and
> (12) Awards in similar cases.

The Court weighs the § 330(a)(3) and *Johnson* factors as follows:

*§ 330(a)(3)(A): Time spent*. The total time spent is high compared to a typical chapter 13 case in this district.

*§ 330(a)(3)(B): Rates charged*. The rates charged for Mr. Harris and Mr. Banning ($250) and Ms. Stevenson ($150) are reasonable. They are experienced, knowledgeable professionals.

*§ 330(a)(3)(C): Necessary/beneficial*. For the most part, the work done was necessary and beneficial.

*§ 330(a)(3)(D): Timeliness*. The work was timely. Three months to take the case from the petition date to plan confirmation is good.

*§ 330(a)(3)(E): Skill/experience*. Messrs. Harris and Banning are experienced and skilled chapter 13 lawyers. Ms. Stevenson is an experienced and skilled bankruptcy paralegal.

*§ 330(a)(3)(F): Customary compensation in non-bankruptcy cases*. The rates charged are at or less than rates charged by similarly experienced and skilled attorneys for nonbankruptcy work.

*Johnson factor ("JF") 1: Time and labor required?* If a "typical" chapter 13 case can be shepherded through plan confirmation for about $5,000 in attorney and paralegal fees, the time spent on such a case might look like this:

| Task | Atty ($250/hr.) | Paralegal ($150/hr.) | Fee |
|---|---|---|---|
| Petition, Schedules, SOFAs | 2.0 | 3.0 | $950 |
| Means test | | 1.0 | $150 |
| Plan drafting | 2.0 | | $500 |
| Claims review | 1.0 | | $250 |
| Mortgage review | .5 | | $125 |
| State tax issues; collecting and forwarding missing reports, returns, and affidavits | 1.0 | | $250 |
| § 341 meeting | 1.0 | | $250 |
| Plan confirmation work | 3.0 | | $750 |
| Communication with clients/ obtaining needed documents and information | 2.0 | 1.0 | $650 |
| Miscellaneous | 4.0 | 1.0 | $1,150 |
| Total | 16.5 | 6.0 | $5,025 |

Ms. Stevenson's time came pretty close to this estimate: she billed 5.8 hours. Mr. Banning, on the other hand, billed more than twice the estimated attorney time. Even assuming that the case was more difficult than average, the amount of time billed seems high. In particular, the time billed for preparing the schedules and SOFAs, working on plan confirmation, reviewing claims,[6] and surrendering the RV seems high.

*JF 2: Novelty and difficulty of the questions?* It does not appear that any of the legal issues addressed in this bankruptcy case were particularly novel or difficult.

*JF 3: Skill requisite to perform the legal service properly?* Counsel's professionals have the requisite skills. The case was handled well.

---

[6] Had the plan been a 100% plan, a detailed claims review might have been advisable. As it is, 4.5 hours to review claims for the mortgage, the RV loan, the car loan, federal income taxes, and five unsecured/credit card debts seems a lot, particularly when one of the chapter 13 trustee's duties is to review claims. *See* §§ 1302(b)(1) and 704(a)(5).

*JF 4: Preclusion of other employment due to acceptance of the case?* There is no evidence that Counsel was precluded from other work by taking Debtors' bankruptcy case. Bankruptcy work in this district is at a low ebb.

*JF 5: Customary fee?* In this district, the customary fee to take a "typical" chapter 13 case through plan confirmation is about $5,000 in attorney and paralegal fees, plus costs and tax. Compared to this figure, Counsel's fee request is high.

*JF 6: Whether the fee is fixed or contingent?* The fee is fixed.

*JF 7: Time limitations imposed by the client or circumstances?* Nothing in the record indicates that there were time pressures involved in this case.

*JF 8: Amount involved and results obtained?* Claims filed totaled $465,111.15, including $361,626 in secured claims and $6,702 in priority tax claims.

*JF 9: Experience, reputation, and ability of the attorneys?* Counsel's professionals are experienced and skilled in chapter 13 work.

*JF 10: Undesirability of the case?* There is no reason to conclude that this case was undesirable.

*JF 11: Nature and length of professional relationship with the client?* Not applicable.

*JF 12: Awards in similar cases?* As set out above, the attorney and paralegal fees charged for a "typical" chapter 13 case in this district are about $5,000, plus costs and tax.

The Court concludes that, giving Counsel the benefit of the doubt on the complexity of this case, it would be reasonable to allow fees of $7,500, or 50% more than the typical, simple case. To do so, the fees requested by Counsel will have to be reduced from $10,170 to $7,500. Taxes will be reduced commensurately. Costs will be allowed as requested.

## Conclusion

Counsel did a good job for Debtors in this case and got a good result. Creditors also benefited from Counsel's work—they should receive a substantial payment on their claims. Counsel billed a lot of time to achieve this result, however, and the Court concludes that it can only allow fees of $7,500. A separate order will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 19, 2021
Copies to: electronic notice recipients