UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ROBERT JAMES ABERNATHY and
TINA LOUISE ABERNATHY,                                    Case No. 20-11600-t13

       Debtor.

# OPINION

Before the Court is the second fee application of Debtors' chapter 13 counsel, New Mexico Financial and Family Law, P.C. ("Counsel"). In the application, Counsel seeks allowance of $9,794[1] in professional fees, costs, and New Mexico gross receipts tax. Because the amount sought is significantly higher than the average second fee application for a chapter 13 case in this district, the Court has reviewed the application in detail. The Court now concludes that it will allow Counsel's professional fees in the amount of $5,355, plus gross receipts tax.

A.    Facts.

The Court finds:[2]

On or about May 4, 2020, Debtors retained Counsel to file this case. The billing rates for the professionals who worked on the case were $250/hour for attorneys Don Harris and Dennis Banning and $150/hour for paralegal Jill Stevenson. Debtors gave Counsel a $3,000 retainer.

Counsel filed the case on August 11, 2020. The initial filings included the petition, means test, schedules, statement of financial affairs, plan, credit counseling certificate, and attorney fee disclosure. The attorney disclosure stated that Counsel had received a $3,000 retainer and had

---

[1] All dollar amounts are rounded to the nearest dollar.
[2] The Court took judicial notice of the docket in this case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (same).

agreed to represent Debtors for $250/hr. In Debtors' proposed plan, Counsel estimated its total fees, costs, and taxes, through confirmation, would be about $7,500. Given the $3,000 retainer, Counsel estimated that $4,500, plus post-confirmation fees, would be paid through the plan.

Debtors' schedules reflect total assets of $747,720, total debts of $467,119, and net monthly income available for plan payments of $1,142.

Debtors' plan was relatively simple. Debtors proposed to make monthly payments of $1,000 for 60 months,[3] which would pay Counsel's fees, trustee fees, a federal tax debt, and a portion of general unsecured claims. The plan proposed to pay Debtors' home mortgage and car loan "outside the plan." There were no pre-petition arrearages on either loan, which made plan drafting easier. Finally, the plan proposed to surrender Debtors' RV to the purchase money lender. After the lender sold the RV it would have an unsecured claim for the deficiency, which would be paid pro rata with other general unsecured creditors.

Debtors attended their § 341[4] meeting on September 16, 2020. At the meeting, Tina Abernathy apparently told the chapter 13 trustee about a new job.

The plan drew two objections, from New Mexico Taxation and Revenue Department and the trustee.

The claims bar date was October 20, 2020. Ten claims were filed, totaling $465,111. Of this amount, $361,626 was secured, $6,702 was priority (IRS), and $96,782 was nonpriority unsecured. The IRS claim was later reduced to $2,785.

The Court held a preliminary hearing on plan confirmation on October 6, 2020. It set a final hearing for November 10, 2020.

---

[3] Per § 1325(b)(4)(A)(ii), Debtors have above-median income, so they had to file a five-year plan.
[4] All statutory references are to 11 U.S.C., unless otherwise noted.

Debtors' plan was confirmed November 16, 2020, by entry of a stipulated order agreed to by Debtors, the trustee, and counsel for the New Mexico Taxation and Revenue Department. In the confirmation order, Debtors agreed to increase their plan payments from $1,000 to $1,350 per month. The increase was needed to satisfy the "projected disposable income" test of § 1325(b)(1)(B), i.e., that plan payments are equal to Debtors' projected monthly disposable income for 5 years.[5] Debtors also agreed to amend their schedules I and J to reflect Tina Abernathy's change in employment.

Surrendering the RV was not as simple as it could have been because the RV had been damaged. Debtors and Counsel decided that it would be better to repair the damage before surrendering the RV, to minimize the deficiency claim.

Counsel billed Debtors 37.2 hours of attorney time and 5.8 hours of paralegal time to get the case through confirmation.

Post-confirmation, Debtors have made their plan payments, and more.[6] In September 2021, Debtors sold their house in Albuquerque, New Mexico, and moved to Farmington, New Mexico. Both debtors changed jobs, requiring another amendment to schedules I and J. The sale of the house required Counsel to file a motion to retain a Realtor and a motion to approve the sale of the house. Both motions were granted without opposition or the need for a hearing.

For work done between December 2020 and March 2023, Counsel billed Debtors $9,794, which includes $695 of gross receipts tax. In general, the billed time can be broken down as follows:

---

[5] The confirmation order estimated this amount to be $71,910.60. Total plan payments will be $88,000.
[6] Through May 2022, Debtors paid $35,500 to the chapter 13 trustee, although only required by their confirmed plan to pay $27,650.

-3-
Case 20-11600-t13    Doc 105    Filed 08/25/23    Entered 08/25/23 13:19:04 Page 3 of 10

| Task | Billed attorney time | Billed paralegal time | Fee charged |
|---|---|---|---|
| Amending Schedules I and J | 8.5 | 1.3 | $2,320 |
| Employing the Realtor | 1.3 | 0 | $ 325 |
| Selling the house | 7.6 | 0 | $1,900 |
| Counsel first fee application | 0 | 1.2 | $ 180 |
| Counsel second fee application | 1.1 | .3 | $ 320 |
| Clerical work | 4.5 | 0 | $1,125 |
| Correcting mistakes | 4.6 | .2 | $1,005 |
| Other | 5.6 | .6 | $1,665 |
| Total | 33.2 | 3.6 | $8,840 |

B.  General Requirements for Debtor Attorney Fee Allowance in Chapter 13.

Compensation of counsel for chapter 13 debtors is governed by § 330(a)(4)(B), which provides:

> In a ... chapter 13 case ... the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

This subsection was added to the bankruptcy code by the Bankruptcy Reform Act of 1994.[7]

"[A] chapter 13 debtor has the right to employ counsel so long as the following two requirements are met: 1) the need to disclose compensation paid or agreed to be paid pursuant to section 329 and 2) the need for approval of post-petition payments from property of the estate pursuant to section 330(a)(4)(B)." *In re Rosales,* 621 B.R. 903, 922 (Bankr. D. Kan. 2021), quoting *In re Cahill,* 478 B.R. 173, 176 (Bankr. S.D.N.Y. 2012).

Allowance under § 330(a)(4)(B) can include reimbursement of expenses advanced, e.g., filing fees, witness fees, and deposition costs. *See, e.g., In re Riley*, 923 F.3d 433, 443 (5th Cir.

---

[7] The Reform Act also deleted the language "or to the debtors attorney" from § 330(a)(1). Until then, § 330(a)(1) had included debtor's attorney in the list of persons who could be paid from the estate. In *Lamie v. United States Trustee*, 540 U.S. 526 (2004), the Supreme Court held that the Reform Act meant that debtor's counsel in a chapter 12 or 13 can only be compensated under § 330(a)(4)(B).

2019); *In re Frazier*, 569 B.R. 361, 369 (Bankr. S.D. Ga. 2017); *In re Genatossio*, 538 B.R. 615, 617 (Bankr. D. Mass. 2015) (§ 330(a)(4)(B) permits an award of fees and expenses); *In re Pastran*, 462 B.R. 201, 213 (Bankr. N.D. Tex. 2011) (same); *In re Marvin*, 2010 WL 2176084 (Bankr. N.D. Iowa 2010) (allowing reimbursement of expenses); *In re Williams*, 384 B.R. 191, 194 (Bankr. N.D. Ohio 2007) (court may award fees and expenses); *cf. In re Marotta*, 479 B.R. 681, 689 (Bankr. M.D.N.C. 2012) (advance for the filing fee is not recoverable under § 330(a)(4)(B)).

"The attorney seeking compensation bears the burden of proving entitlement to all fees and expenses requested." *In re Dille*, 2021 WL 864201, at *2 (Bankr. W.D. Mo.), citing *In re Kula*, 213 B.R. 729, 736 (8th Cir. BAP 1997); *In re Cooke,* 2020 WL 6821730, at *3 (Bankr. D. Ariz.), citing *In re Roderick Timber Co.,* 185 B.R. 601, 606 (9th Cir. BAP 1995) "This burden is not to be taken lightly given that every dollar expended on legal fees results is a dollar less that is available for distribution to the creditors." *Dille*, 2021 WL 864201, at *2, citing *In re Ulrich,* 517 B.R. 77, 80 (Bankr. E.D. Mich. 2014).

C.      Determining How Much Compensation Should be Allowed.

"To be compensable, the fees must be for services that were 'actual' and 'necessary.' § 330(a)(1)(A). If the applicant clears these hurdles, then the fees must be 'reasonable.'" *In re Railyard Company, LLC*, 2017 WL 3017092, at *3 (Bankr. D.N.M.); *see also In re Lederman Enterprises, Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) (same); *In re Commercial Financial Services, Inc.*, 427 F.3d 804, 810 (10th Cir. 2005) (same).

1.      Actual Services. Compensation can only be allowed for "actual" services performed. *See, e.g., In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 601 (Bankr. D. Colo. 1989) ("The Code requires that the services actually be performed before the compensation is awarded.

Therefore, work to be performed does not qualify for actual services rendered"). This is not an issue here.

2. <u>Necessary Services</u>. Necessity is a question of "whether the services were necessary to the administration of, or beneficial toward the completion of a case." *In re Schupbach Investments, LLC*, 521 B.R. 449, at *8 (10th Cir. BAP 2012) (unpublished); *In re Hungry Horse, LLC*, 2017 WL 3638182, at *3 (Bankr. D.N.M.) (same). In chapter 13 cases, the benefit can be to the debtor rather than the estate. *In re Guajardo*, 2020 WL 4919794, at *3 (Bankr. D.N.M.); *In re Williams*, 378 B.R. 811, 823 (Bankr. E.D. Mich. 2007) (§ 330(a)(4)(B) is an exception to the general rule that professionals' services must benefit the estate to be compensable); *In re Argento*, 282 B.R. 108, 116 (Bankr. D. Mass. 2002) (same).

Reviewing the docket in this case and Counsel's fee bills, the Court concludes that work was necessary in each category outlined in the table above, except for the categories Clerical Work and Correcting Mistakes.

3. <u>Reasonable Compensation</u>. In the Tenth Circuit, bankruptcy courts ruling on the reasonableness of professional fees must weigh the factors in § 330(a)(3) and those discussed in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974). *See In re Market Center East Retail Property, Inc.*, 730 F.3d 1239, 1246-47 (10th Cir. 2013). Under § 330(a)(3) the Court must consider:

> (1) the time spent on such services;
> (2) the rates charged for such services;
> (3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

The *Johnson* factors are:

(1) The time and labor required;
(2) The novelty and difficulty of the questions;
(3) The skill requisite to perform the legal service properly;
(4) The preclusion of other employment by the attorney due to acceptance of the case;
(5) The customary fee;
(6) Whether the fee is fixed or contingent;
(7) Time limitations imposed by the client or the circumstances;
(8) The amount involved and the results obtained;
(9) The experience, reputation, and ability of the attorneys;
(10) The "undesirability" of the case;
(11) The nature and length of the professional relationship with the client; and
(12) Awards in similar cases.

The Court weighs the § 330(a)(3) and *Johnson* factors as follows:

| Factor | Discussion |
|---|---|
| *§ 330(a)(3)(A): Time spent*. | The total time spent for the work done is the second application period is high compared to a typical chapter 13 case in this district. This can be explained in part by the fact that Counsel charged .2 hours for many tasks that may likely not have taken twelve minutes. In addition, Counsel billed for some clerical duties. Further, Counsel billed time to correct mistakes, i.e., to revise the first fee application to conform to local practice and to correct a defective motion to sell. Finally, the time spent amending schedules I and J, typically a routine task, is unreasonably high. |
| *§ 330(a)(3)(B): Rates charged*. | The rates charged for Mr. Harris and Mr. Banning ($250) and Ms. Stevenson ($150) are reasonable. They are experienced, knowledgeable professionals. |
| *§ 330(a)(3)(C): Necessary/beneficial*. | For the most part, the work done was necessary and beneficial. |
| *§ 330(a)(3)(D): Timeliness*. | The work was timely. Counsel filed the motion to sell the house timely and got the deadline to object shortened so the sale could close in accordance with the wishes of the buyer. If there was any time pressure to get the house sale approved, however, it was caused in part by Counsel's |

| | |
|---|---|
| | failure to file an acceptable motion to sell in the first instance.[8] |
| § 330(a)(3)(E): Skill/experience. | Attorneys Harris and Banning are experienced and skilled chapter 13 lawyers. Ms. Stevenson is an experienced and skilled bankruptcy paralegal. |
| § 330(a)(3)(F): Customary compensation in non-bankruptcy cases. | The rates charged are at or less than rates charged by similarly experienced and skilled attorneys for nonbankruptcy work. |
| Johnson factor ("JF") 1: Time and labor required? | Some work was required to deal with Debtors' job changes and relocation. The Court finds, however, that the work done during this application period took longer than it should have, that some was nonbillable clerical work, and that some is non-compensable because it was done to fix mistakes. |
| JF 2: Novelty and difficulty of the questions? | None of the legal issues addressed by counsel during the application period were particularly novel or difficult. |
| JF 3: Skill requisite to perform the legal service properly? | Counsel's professionals have the requisite skills. |
| JF 4: Preclusion of other employment due to acceptance of the case? | There is no evidence that Counsel was precluded from other work by taking Debtors' bankruptcy case. Bankruptcy work in this district is at a low ebb. |
| JF 5: Customary fee? | In this district, an average second fee application filed in a chapter 13 case is about $2,000, including gross receipts tax. Compared to this figure, Counsel's fee request is high. Furthermore, this may not be Counsel's last fee application. Debtors' still have two years to go on their plan. |
| JF 6: Whether the fee is fixed or contingent? | The fee is fixed. |
| JF 7: Time limitations imposed by the client or circumstances? | There may have been some time pressure to obtain a court order approving the sale of the house. If so, the pressure was increased by Counsel filing an erroneous and incomplete motion to sell and then having to file an amended motion 15 days later. |
| JF 8: Amount involved and results obtained? | Claims filed totaled $397,050, including $298,036 in secured claims, $2,769 in priority tax claims, and $96,245 in general unsecured claims. Debtors should pay their |

---

[8] The first motion to sell, filed August 2, 2021, did not disclose the purchase price. Furthermore, although the motion referred to a purchase contract attached to the motion, no contract was attached. Finally, the motion says that it seeks authority to sell the house free and clear of lien pursuant to § 363(f) but did not take the steps necessary to do so. When these mistakes were pointed out by the chapter 13 trustee in her objection, filed August 9, 2021, Counsel waited until August 17, 2021, to file an amended motion. The amended motion cured most of the problems with the first motion, although not the § 363(f) reference. The amended motion had to be re-noticed and the objection deadline shortened.

|  | priority claims and discharge their general unsecured claims, in exchange for about $88,000 of plan payments, plus "outside the plan" payments on their home mortgage and car loan. That will be a good result. |
|---|---|
| JF 9: Experience, reputation, and ability of the attorneys? | Counsel's professionals are experienced and skilled in chapter 13 work. |
| JF 10: Undesirability of the case? | The case was desirable. |
| JF 11: Nature and length of professional relationship with the client? | Not applicable. |
| JF 12: Awards in similar cases? | Second fee applications in chapter 13 cases in this district average about $2,000. Counsel's second fee application is almost five times the average. |

The Court concludes that fees should be allowed in the amount of $5,355 plus costs and gross receipts tax, which is $3,485 less than Counsel's requested fees. The Court arrived at this figure by disallowing 4.5 hours of clerical work,[9] 4.8 hours of work done to correct mistakes,[10] and reducing the fees allowed for amending schedules I and J by $1,180. Even with these disallowances, the resulting fee is significantly higher than the average second chapter 13 fee application. To date, Counsel has billed more than $21,000 for this chapter 13 case. It is not a $21,000 case. After disallowing some of the fees requested by the first and second fee applications, the Court will have reduced the allowed fees to $13,165 plus gross receipts tax, which is still very high.

---

[9] The clerical work included setting up Zoom calls, sending documents to Debtors without analysis, obtaining signatures from Debtors, and corresponding with the broker about the house sale and his employment.

[10] For the unsurprising proposition that a lawyer cannot charge a client to fix mistakes the lawyer's mistake, *see, e.g., Clawson v. Mountain Coal Co.*, 2007 WL 4225578, at 12 (D. Colo.) (it is not appropriate to require the client to bear the cost of fixing counsel's mistakes); *In re Wheeler*, 439 B.R. 107, 110-11 (Bankr. E.D. Mich. 2010) (the time spent making the mistake is unnecessary and noncompensable or, in the alternative, the time spent correcting the mistake is unnecessary and noncompensable); *In re Redington*, 2018 WL 6444387, at *6 (Bankr. D.N.J.) (citing and following *Wheeler*); *In re Yogi*, 2014 WL 3749553, at *1 (Bankr. D. Haw.) ("I will not allow compensation for services that were necessary only because the attorney made a mistake."); *In re Southworth*, 2023 WL 3185407, at *11 (Bankr. N.D.N.Y.) (following and citing *Yogi*).

Case 20-11600-t13    Doc 105    Filed 08/25/23    Entered 08/25/23 13:19:04 Page 9 of 10

Conclusion

Counsel has done a good job in this case; the eventual discharge should benefit Debtors considerably. At the same time, the case will yield a reasonable dividend to general unsecured creditors. The problem is not work quality, but the fees charged. They are much too high for the case. Disallowance is required to bring the fees within the range of reason. By separate order, the Court will allow fees of $5,355, plus costs and gross receipts tax, for Counsel's second fee application.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 25, 2023
Copies to: electronic notice recipients